In the Matter of the Estate of KATHARINE R. BRADY, Deceased.

Surrogate's Court, Kings County, April 22, 1935.

*Gray & Tomlin,* for the Home for the Aged of the Little Sisters of the Poor.

*Walter E. Warner,* for the proponent.

*G. W. & W. N. Winans,* for the contestants.

*John J. Barrett,* for the Society for the Propagation of the Faith.

*Amend & Amend,* for St. Anthony's Hospital, Sisters of the Poor.

*James A. Donegan,* for the Servants of Relief for Incurable Cancer.

*John T. Fenlon,* for St. Mary's Seminary, Baltimore.

*Joseph C. H. Flynn,* for The Catholic University of America.

WINGATE, S. The question here in controversy concerns the papers which should be included in the printed record on appeal from an order of this court denying a motion to resettle the order framing issues in this contested probate.

The proceeding in the course of which this motion was made was instituted by the filing in this court on June 21, 1934, of the usual petition for probate.

The sole statutory distributee, Mary A. Vedera, filed the usual omnibus broadside of objections and St. Mary's Seminary, which asserted a claim as a legatee, also objected. Notices of appearance were filed by various legatees, largely charities, named in the propounded instrument. Among these was the one which is presently aggrieved by reason of the order here under discussion. No answers were filed by any of these last-named parties.

On due notice to all concerned an uncontested order was made framing the usual issues for trial by jury. This order read as follows:

" Ordered and directed that there be had before the Surrogate and a jury, at the Surrogate's Court of the County of Kings, a trial of the following issues of fact:

" 1. Did Katharine R. Brady subscribe the paper offered for probate at the end thereof in the presence of at least two of the attesting witnesses, or acknowledge to each of them that such subscription appearing on such paper, had been made by her?

" 2. At the time of making such subscription, or acknowledgment, did Katharine R. Brady declare to each of at least two of the attesting witnesses that the paper offered for probate was her Last Will and Testament?

" 3. Were there at least two attesting witnesses each of whom signed his or her name at the end of said paper offered for probate at the request of Katharine R. Brady?

" 4. Did Katharine R. Brady know the contents of the paper offered for probate as her Will, and did said papers express the testamentary disposition intended by her?

" 5. At the time of the execution of the paper offered for probate, did Katharine R. Brady possess testamentary capacity?

" 6. Was the execution by Katharine R. Brady of said paper offered for probate, caused or procured by the undue influence of any person or persons?

" 7. Was the execution by Katharine R. Brady of the said paper offered for probate caused or procured by the fraud of any person or persons? "

A jury trial was duly had, and resulted in a disagreement. The case was thereupon promptly renoticed for trial and was placed on the calendar where it has since been, waiting its turn for retrial.

Thereafter, more than a month subsequent to the last action hereinbefore recited, a motion was made on behalf of the Home for the Aged of the Little Sisters of the Poor, one of the legatees under the propounded will, "for an order resettling the order framing issues, dated the 8th day of October, 1934, herein," by the substitution of six new questions in place of the sixth and seventh questions contained in the original order. The first three of these proposed new issues read:

"6. Was that particular portion of the said paper offered for probate, which reads as follows, to wit: 'Two (2) parts thereof to my friend James Dempsey' induced by undue influence of any person or persons?

"7. Was that particular portion of the paper offered for probate, which reads as follows, to wit: 'Sixth. I hereby nominate and appoint my friend James Dempsey to be executor and trustee of this my last Will and Testament' induced by undue influence of any person or persons?

"8. Was the rest of the said paper offered for probate other than the two portions thereof mentioned and described in questions 6 and 7 induced by the undue influence of any person or persons?"

The final three proposed new issues were substantially equivalent to the foregoing, except that "fraud" is substituted for "undue influence" in each place in which it appears.

The motion to reframe the issues to be submitted for trial was denied on the sole ground that "The failure of the present applicant to file any answer in this proceeding amounted in law to its adoption in toto of the petition with which issue was joined by the answer of the contestant. The issues so raised have been framed, have been tried and are now on the eve of retrial. No different issues can be raised in the absence of an answer affirmatively raising them." (N. Y. L. J. Mar. 21, 1935, p. 1451).

The purpose of an order framing issues is precisely what its designation implies, namely, a concrete, tangible statement of the questions which have been raised by the pleadings of the proponent on the one hand, and of the several contestants on the other and to which it is desired that a jury shall return answers. In the present case the only issues which have been raised are those set forth in the only two answers which have been filed, and which affirmatively allege that the will, which obviously includes the entire testamentary document, was the result of fraud and undue influence. As amplified by contestant's bill of particulars, such fraud and undue influence are alleged to have been exerted by two specified individuals, namely, Walter E. Warner and James Dempsey. This is the sole presently pertinent issue in the case.

It is directed against the will as a whole and there is not the slightest semblance of a suggestion in any portion of the pleadings, which alone can raise the issues for trial, of any differentiation between separate parts of the will.

If such an issue is capable of being raised, it is an affirmative defense which has not here been pleaded. Not having been pleaded, it is not an issue, and not being an issue, there is no authority for its inclusion in the order framing issues.

The present applicant, having failed to answer, in effect joined in the prayer of the petition, which was for the probate of the will *as a whole*. If it desired to raise any other issue, it must have done so by answer at the proper time. Having failed to do so, it is now in default and cannot be permitted to inject any new issues into the case except by the usual orderly process of an application to open its default and to be permitted to interpose the affirmative answer which it here in effect seeks to do by indirection. (*Boughton* v. *Flint*, 74 N. Y. 476, 486; *Matter of Melzak*, 153 Misc. 600, 605.)

Whereas these considerations may appear to be merely an extended restatement of the position of the court in its denial of the application to reframe the issues, which determination is the subject of the present appeal, they are in reality germane to the decision of the present controversy as to what should be included in the record on this appeal.

The papers which are required to be included in the record on an appeal from an order are specified in section 616 of the Civil Practice Act and in rule 234 of the Rules of Civil Practice, which, under section 316 of the Surrogate's Court Act, are made applicable to this court.

The pertinent part of section 616 requires the printing of " the notice of appeal and * * * the papers used before the court * * * upon the hearing of the * * * motion." Rule 234, while in substance the same, provides for the inclusion " of the papers which were used in the court below and are specified in the order."

It is by reason of this latter phraseology that the respondents seek to have included in the record on this appeal (1) a waiver of the sole statutory distributee, which the court held not to be conclusive against her right to file objections; (2) the depositions of the subscribing witnesses; (3) the order to show cause and supporting affidavits respecting the right of the statutory distributee to file objections in spite of her previous waiver; (4) the answering and replying affidavits in connection with the application last referred to; and (5) the complete stenographer's minutes of the abortive trial which resulted in the disagreement of the jury.

This position is predicated on the fact that the order from which the appeal is presently being taken recited that it was made " upon all the pleadings and proceedings heretofore had herein " as well as on the particular affidavits on which the motion was actually based.

This is surely an excessively narrow and legalistic construction of the rule, the purpose of which is merely to secure the inclusion in the record on appeal of those portions of the documents in the case which caused the court below to make the determination from which the appeal is prosecuted, to the end that the appellate tribunal may determine whether, on the basis of the showing to which the court below attributed significance, its decision was or was not legally correct.

The form of the recitals here adopted is merely a convenient expedient for the avoidance of a complete recital of every document forming the basis for the decision. The one here employed is not as sweeping in its description as many which are submitted for signature, which frequently purport to include as the bases for determination " all the * * * proceedings heretofore had *in this court.*" If such a form had here been employed, it cannot be supposed that the respondents would have insisted that appellant should print all records of this court in every case litigated during the period from the days of the Colonial Governors to the present time. Obviously, the phrase should be considered as limited by the words " pertinent to the issue determined; " and the same applies to the phraseology actually here employed.

As was said by the Court of Appeals in *Weseman* v. *Wingrove* (85 N. Y. 353, at p. 358), respecting the substantially similar section of the code and the former rule from which the present enactments were derived: " Neither the Code nor the rule are to be so literally construed as to compel the printing and presentation of unnecessary and superfluous papers. What is material and necessary to the proper action of the appellate court is enough." (See, also, *Moran* v. *Rainbow Appliance Corporation*, 225 App. Div. 587, 591; *Lambden* v. *Thompson*, 170 id. 953; *Derby* v. *General Elec. Co.*, 208 id. 529, 531; *National Fire Ins. Co.* v. *Shearman*, 223 id. 127, 129, 130.)

The decision here actually made was obviously not on the merits but was merely to the effect that a party occupying the position on the record of the present applicant, namely, that of a respondent who had defaulted in answer, would not be permitted at the later date to inject questions into the issues to be determined by jury, which had not been raised by the pleadings, and that it would not be permitted, in effect, to open its default by a back-door route.

The papers which the appellant proposes to print adequately set forth all of the bases upon which the denial of the motion by this court were predicated except the fact that the issues previously framed had been tried before a jury for five days and that this trial had ended in a disagreement. These facts should appear on the record, which should obviously also include the opinion of this court.

The decision was made solely upon a question of practice without going into the merits. If the Appellate Division deems that the decision was erroneous as to the question of practice and that the surrogate should have gone into the merits, it can so indicate and that question can then be taken up.

No costs of this motion will be granted.

Proceed accordingly.